UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

MINHYE PARK,

                              Plaintiff,

    -against-

DAVID DENNIS KIM, M.D.,

                              Defendant.

---------------------------------------------------------------------X

Index No.:  1:20-cv-02636

**DECLARATION IN SUPPORT OF MOTION TO COMPEL**

**ALEJANDRA R. GIL,** declares under the penalty of perjury as follows:

I am a partner of the law firm of HEIDELL, PITTONI, MURPHY & BACH, LLP, counsel for

Defendant DAVID DENNIS KIM, M.D. I am fully familiar with the facts set forth below based

on my review of the file maintained by this office for the defense of this action.

           Exhibits A – M were previously filed as part of Defendant's Motion to Compel,

PACER Doc. 17.  These documents can be accessed by clicking on the hyperlinked exhibit

reference in the Memorandum of Law.

1.      Exhibit A is a true and correct copy of the Summons and Complaint.

2.      Exhibit B is a true and correct copy of Defendant's Answer.

3.      Exhibit C is a true and correct copy of Defendant's First Set of Interrogatories and

First Demand for the Production of Documents.

4.      Exhibit D is a true and correct copy of Plaintiff's Response to Defendant's First

Demand for Interrogatories and her Rule 26 Disclosures.

5.      Exhibit E is a true and correct copy of Defendant's Letter to Plaintiff date February

8, 2021.

2520140.1

6.      Exhibit F is a true and correct copy of Defendant's Letter to Plaintiff dated March 9, 2021.

7.      Exhibit G is a true and correct copy of Defendant's Letter to Plaintiff dated April 29, 2021.

8.      Exhibit H is a true and correct copy of Defendant's Second Demand for Production of Documents.

9.      Exhibit I is a true and correct copy of Defendant's Letter to Plaintiff dated June 21, 2021.

10.     Exhibit J is a true and correct copy of Plaintiff's medical records from her treatment with Dr. Kim.

11.     Exhibit K is a true and correct copy of Plaintiff's First Request for Admission.

12.     Exhibit L is a true and correct copy of Defendant's Letter to Plaintiff dated March 9, 2021 concerning Plaintiff's First Request for Admissions.

13.     Exhibit M is a true and correct copy of the Sharefile Receipt documenting that plaintiff's counsel was sent Dr. Kim's chart on February 10, 2021.

14.     Annexed as Exhibit N is a true and correct copy of Plaintiff's Expert Report.

15.     Annexed as Exhibit O is a true and correct copy of Defendant's Letter to Plaintiff dated September 17, 2021.

16.     Annexed as Exhibit P are true and correct copies of Defendant's Responses to Plaintiff's Interrogatories and Demand for Production of Documents.

17.     Annexed as Exhibit Q is a true and correct copy of Plaintiff's Letter to Defendant dated January 28, 2022, regarding deficiencies and attaching expert report and authorization.

18.     Annexed as Exhibit R is a true and correct copy of Defendant's Letter to Plaintiff

dated February 1, 2022, responding to deficiency letter and Defendant's Expert

Report

Dated:  White Plains, New York
        February 4, 2022

Respectfully submitted,

HEIDELL, PITTONI, MURPHY & BACH, LLP

By: _____

   Alejandra R. Gil (AG 7582)
   81 Main Street
   White Plains, New York 10601
   Tel:  (914) 559-3133
   Fax:  (914) 949-1160
   agil@hpmb.com

   Attorneys for Defendant
   DAVID DENNIS KIM, M.D.


TO:     **VIA ECF & E-MAIL - (*jae@lawjsl.com*)**
        Jae Lee, Esq.
        JSL LAW OFFICES, P.C.
        Attorneys for Plaintiff
        626 RXR Plaza
        Uniondale, New York  11556

2520140.1

# EXHIBIT N

# EXPERT REPORT

# CASE: PARK V. KIM

Submitted by:

**Dr. John M. Garofalo, MD, FACOG**

## Reviewed Documents

1. EXHIBIT B _ D med records, p.31
2. EXHIBIT C _ med rec. MIRAE
3. EXHIBIT D _ med rec ROSEMOM
4. Medical Records _ Queens Surgical Care Center (Defendant Dr. Kim) _11.27, 2018


## Clinical Summary

Plaintiff visited Defendant for the first time on November 16, 2017 as her symptoms indicated that she was likely pregnant. Defendant told Plaintiff that it's too early to determine whether Plaintiff was pregnant or not, and asked Plaintiff to come later. During her second visit on November 21, 2017, Defendant confirmed that the plaintiff was indeed pregnant and performed a suction curettage on November 27, 2017. At the time of the procedure, the defendant failed to examine the tissue obtained from the suction curettage to determine the volume of tissue removed or the presence of chorionic villi.  Approximately one week after the suction curettage, a pathology report indicated that there was no evidence of chorionic villi or embryonic tissue in the sample.

On December 13, 2017, Defendant Dr. Kim performed an ultrasound examination that revealed an eight week viable intrauterine pregnancy. Dr. Kim then admitted his failure to terminate plaintiff's pregnancy. On December 19, 2017,  two physicians in South Korea examined the plaintiff, including the use of ultrasound test, and confirmed a viable intrauterine pregnancy. on December 27, 2017, a repeat suction curettage was performed.

The past history of prior first trimester abortions approximately 10 years ago was appreciated.


## Background

Suction curettage  is a safe and efficacious procedure for first trimester termination of pregnancy. The failure rate of the procedure is inversely related to the gestational age at the time the procedure is performed. At five weeks since the last menstrual period (LMP) the failure rate is 1/100. This decreases to 1/500 at 7 weeks since LMP.  Following suction curettage, it is incumbent upon the surgeon to evaluate the tissue removed from the uterus in order to ascertain the completeness of the procedure so as to rule out persistent pregnancy and a ectopic pregnancy. The standard of care requires that the tissue is examined by "floating" and backlighting the tissue. This standard was clearly documented in the National Abortion Federation in 2015[1] as follows:

> *Standard 13.1. Termination of pregnancy must be confirmed prior to the woman leaving the facility or further evaluation must be initiated.*
> *Recommendation 13.1.1. Evacuated uterine contents should be examined before the woman leaves the facility.*
> *Recommendation 13.1.2. In first-trimester terminations, flotation of tissue*

---

[1] Deutsch FE. 66727 NAF S1-National Abortion National Abortion Federation Clinical Policy Guidelines.

*should be used to identify products of conception, including gestational sac.*
*Option 13.1.2.1. Backlighting of tissue may be useful.*
*Option 13.1.2.2. Sending the evacuated uterine contents for additional*
*pathological examination is not required.*
*Standard 13.2. When insufficient tissue or incomplete products of conception are*
*obtained, the patient must be reevaluated.*
*Recommendation 13.2.1. Re-aspiration, serial quantitative Hcg, and/or*
*ultrasonographic examination should be*
*considered.*
*Recommendation 13.2.2. In the first trimester, ectopic pregnancy should be*
*considered.*

## Expert Opinion

It is my opinion that the defendant deviated from the standard of care as follows:

1. The defendant failed to inform the plaintiff of the differential risk of failed suction curettage from 5 weeks to 7 weeks.  If she had been aware of the increased risk of failure, she would likely have deferred the procedure for 1-2 weeks.
2. The defendant failed to examine the aspirated tissue prior to the plaintiff's departure from the facility. If the tissue had been examined, the patient could have been offered an repeat suction curettage at that time or additional testing to rule out persistent pregnancy.
3. The defendant failed to inform the plaintiff of the pathology report in a timely manner. If she had been aware of the absence of chorionic villi, she would have had the option to undergo a more prompt suction curettage.

The history of prior abortion was not a risk factor for failed termination of pregnancy.

## Expert Qualifications

*In regarding my expertise to opine in this case, I have been actively involved providing surgical termination of pregnancy in both the first and second trimester for over 40 years. I am a board certified Obstetrician/Gynecologist. I am licensed to practice in Connecticut, and have recently been the Director of Minimally Invasive Gynecology, the Associate Director of Gynecology and an Attending Physician in Obstetrics and Gynecology at Norwalk Hospital, in Norwalk, Connecticut. I have been appointed as an assistant clinical professor of Obstetrics and Gynecology and Reproductive Sciences at Larner College of Medicine, University of Vermont and Assistant Clinical Professor of Obstetrics and Gynecology at Ross University. I practiced OB/GYN for more than 38 years until the time of my retirement in December 2020. I am familiar with the applicable standards of care for medical and surgical termination of pregnancy as well as the management of the associated potential complications.*

**Concluding Statements**

*I believe within a reasonable degree of medical certainty that the care provided to Dr. Kim was below the accepted standard of care for the management of first trimester termination of pregnancy. This opinion is limited by the limited clinical records available for my review. I reserve the right to amend to this report in the event any additional materials become available.*

Respectfully submitted by,

**Dr. John M. Garofalo, M.D. FACOG**                     9/12/2021

# EXHIBIT O



81 Main Street   White Plains, NY 10601-1711
Tel: (914) 559-3100   Fax: (914) 949-1160
www.hpmb.com

**Bianca M. Van Deusen**
**Associate**
**bvandeusen@hpmb.com**

September 17, 2021

**<u>VIA E-MAIL</u>** - *<u>jae@lawjsl.com</u>*
Jae Lee, Esq.
JSL Law Offices, P.C.
626 RXR Plaza
Uniondale, New York 11556

       Re:     Minhye Park v. David Dennis Kim, M.D.
                Index No.:  1:20-cv-02636-PKC-LB
                <u>Our File No.:  778-1018</u>

Dear Ms. Lee:

       Our firm represents Dr. David Dennis Kim in this action.  We are in receipt of your expert report, which was received on September 13, 2021 – after the Court ordered deadline to produce the report by September 10, 2021.  In addition to being late, your expert report is deficient and fails to comply with the requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

       As you know, Rule 26(a)(2)(B) requires disclosure of a written expert witness report.  This rule specifically provides that the report must contain:

          (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
          (ii) the facts or data considered by the witness in forming them;
          (iii) any exhibits that will be used to summarize or support them;
          (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
          (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
          (vi) a statement of the compensation to be paid for the study and testimony in the case.

       The expert report you disclosed did not provide: copies of the  specific records used by Dr. Garofalo to summarize and support his expert opinion; Dr. Garofalo's qualifications, including a list of all publications authored by him within the previous 10 years; Dr. Garofalo's testimonial

2458246.1

**HEIDELL, PITTONI, MURPHY & BACH, LLP**

NEW YORK  |  CONNECTICUT  |  WESTCHESTER  |  LONG ISLAND

Jae Lee, Esq.
Re:  Minhye Park v. David Dennis Kim, M.D.
September 17, 2021
Page 2



history for 4 years; and a statement of the compensation he is receiving for his study and testimony in the case.  Please note that Dr. Garofalo referenced four exhibits in his report, which we were not provided.  As such, we are objecting to this expert report based on these deficiencies.

Additionally, you failed to produce discovery as ordered by Judge Bloom on August 11, 2021.  Please refer to our second letter motion, filed on PACER on September 16, 2021, for a detailed account of the outstanding discovery.

Please provide this outstanding discovery as soon as possible.  Thank you for your attention to this matter.

Very truly yours,

Bianca M. Van Deusen

2458246.1

**Kulka, Rosa**

---

**From:** Kulka, Rosa
**Sent:** Friday, September 17, 2021 3:35 PM
**To:** 'jae@lawjsl.com'
**Cc:** Van Deusen, Bianca M.
**Subject:** Minhye Park; Index No.: 1:20-cv-02636-PKC-LB; Our File No.: 778-1018
**Attachments:** HPMB_NY1-#2458472-v1-PARK_-_Letter_to_PC_re_expert_report_objections_.PDF

Dear Ms. Lee:

On behalf of Bianca Van Deusen, please see the attached correspondence with respect to the above matter.

Thank you.

1

**Kulka, Rosa**

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | 'jae@lawjsl.com' |
| **Sent:** | Friday, September 17, 2021 3:35 PM |
| **Subject:** | Relayed: Minhye Park; Index No.:  1:20-cv-02636-PKC-LB; Our File No.:  778-1018 |

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

'jae@lawjsl.com' (jae@lawjsl.com)

Subject: Minhye Park; Index No.: 1:20-cv-02636-PKC-LB; Our File No.: 778-1018

# EXHIBIT P

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

MINHYE PARK,

                          Plaintiff,

      -against-

DAVID DENNIS KIM, M.D.,

                         Defendant.

--------------------------------------------------------X

Index No.:  1:20-cv-02636

**RESPONSE TO
PLAINTIFF'S FIRST SET
OF INTERROGATORIES**

          Defendant, DAVID DENNIS KIM, M.D., by his attorneys, HEIDELL, PITTONI,

MURPHY & BACH, LLP, upon information and belief, responds to the Plaintiff's First Set of

Interrogatories dated February 9, 2021, as follows:

### RESPONSES

**INTERROGATORY NO. 1:  State the full name and address of the person answering, and, if different, the full name and address of the individual signing, the answers.**

**RESPONSE NO. 1:**  David Dennis Kim, M.D. by his attorneys, Heidell, Pittoni, Murphy & Bach, LLP.  Dr. Kim's address is 143-16 Sanford Avenue, 1st Floor, Flushing, New York 11355.  The address of the law firm of Heidell, Pittoni, Murphy & Bach, LLP is 99 Park Avenue, 7th Floor New York, New York 10016.

**INTERROGATORY NO. 2:  Do you know of any statements made by any person relating to the care and treatment of the plaintiff or the damages alleged of in the complaint? If so, give the name and address of each such witness and the date of the statement, and state whether such statement was written or oral and if written the present location of each such statement.**

**RESPONSE NO. 2:**  Defendant objects to this interrogatory to the extent that it seeks production of materials subject to privilege, including the attorney-client privilege, attorney work product privilege, and documents generated in anticipation of litigation.  Notwithstanding these objections and without waiver thereof, Defendant is unaware of statements responsive to this interrogatory aside from those statements contained within his treatment records of the Plaintiff, which were previously provided under separate cover on February 10, 2021.

2362780.1

**INTERROGATORY NO. 3:  Has the DAVID DENNIS KIM, M.D. been named as a defendant in a lawsuit arising from alleged malpractice or professional negligence during the 8 year period preceding the filing of this lawsuit? If so, state the court, the caption and the case number for such lawsuit.**

**RESPONSE NO. 3:**  Defendant objects to this interrogatory on the grounds that the interrogatory is overly broad, ambiguous, and unduly burdensome.  Defendant further objects to this interrogatory to the extent that the information sought is a matter of public record and can be ascertained by plaintiff.

**INTERROGATORY NO. 4:  State whether DAVID DENNIS KIM, M.D was named or covered under any policy or policies of medical liability insurance at the time of the care or treatment alleged in the complaint? If so, state for each policy:**
**a. The name of the insurance company;**
**b. The policy number;**
**c. The effective policy period;**
**d. The maximum liability limits for each person and each occurrence, including umbrella and excess liability coverage; and**
**e. The named insured(s) under each policy.**

**RESPONSE NO. 4:**  Defendant objects to this interrogatory as duplicative.  Notwithstanding this objection, Defendant previously disclosed that he maintains a professional liability policy with Med Pro RRG CMP RES311321 with limits of $2.3 million primary/$6.9 million aggregate. Plaintiff is again referred to Defendant's Rule 26(f) disclosures which also contained this information and was previously served upon plaintiff.

**INTERROGATORY NO. 5:  State whether any hearing dealing with mortality or morbidity was held regarding the care and treatment of the plaintiff alleged in the Complaint.**

**RESPONSE NO. 5:**  Defendant objects to this interrogatory to the extent that it is not reasonably calculated to lead to admissible evidence, because it seeks materials protected by the quality assurance privileges pursuant to New York State Education Law §6527 and Public Health Law §2805.  Notwithstanding these objections, no mortality or morbidity hearing was held regarding plaintiff's care.

**INTERROGATORY NO. 6:  State the name, author, publisher, title, date of publication and specific provision of all medical texts, books, journals or other medical literature which you or your attorney intend to use as authority or reference in defending any of the allegations set forth in the Complaint.**

**RESPONSE NO. 6:**  Defendant objects to this interrogatory on the grounds that the interrogatory is overly broad, ambiguous, unduly burdensome, and seeks materials protected by attorney work product privilege.  Defendant further objects to this interrogatory as premature.  Disclosure of evidence to be used at trial will be made at the appropriate time, pursuant to the Federal Rules of Civil Procedure, Local Rules of the Eastern District of New York, and/or any court order. Defendant reserves his right to supplement this response.

2362780.1

**INTERROGATORY NO. 7:  Identify each and every rule, regulation, bylaw or other document of any hospital, association, licensing authority, accrediting authority or other private body which you, or your attorneys, may use at trial in defense of the allegations contained in the Complaint.**

**RESPONSE NO. 7:**  Defendant objects to this interrogatory on the grounds that it is overly broad, ambiguous, unduly burdensome, and seeks materials protected by attorney work product privilege. As plaintiff is well aware, there is no hospital defendant in this case and the treatment at issue did not occur at a hospital or other related association.  Defendant further objects to this interrogatory as premature.  Disclosure of evidence to be used at trial will be made at the appropriate time, pursuant to the Federal Rules of Civil Procedure, Local Rules of the Eastern District of New York, and/or any court order.  Defendant reserves his right to supplement this response.

**INTERROGATORY NO. 8:  State whether there were any policies, procedures, guidelines, rules or protocols for procedure complained of in the Plaintiff's Complaint in effect at the time of the care and/or treatment of the plaintiff alleged in the Complaint. If so, state:**
> **a. Whether such policies, procedures, opinions, rules or protocols are published and by whom;**
> **b. The effective date of said policies, procedures, guidelines, rules or protocols;**
> **c. Which medical professionals are bound by said policies, procedures, guidelines, rules or protocols;**
> **d. Who is the administrator of any such policies, procedures, guidelines, rules or protocols; and**
> **e. Whether the policies, procedures, guidelines, rules or protocols in effect at the time of the occurrence alleged in the Complaint have been changed, amended or altered after the occurrence. If so, state the change(s) and the date(s) of any such change(s).**

**RESPONSE NO. 8:**  Defendant objects to this interrogatory as vague, overbroad, unduly burdensome, and to the extent that it is duplicative to demands previously served by plaintiff's counsel.  Notwithstanding these objections and without waiver of same, Defendant is not in possession of any written materials responsive to the interrogatory insofar as it pertains to abortion procedures.

**INTERROGATORY NO. 9:  Was DAVID DENNIS KIM, M.D an employee, agent, servant, shareholder or partner of a hospital at the time of the care or treatment of the plaintiff alleged in the Complaint? If so, state the name of the hospital and with specificity the nature of the relationship.**

**RESPONSE NO. 9:**  Defendant objects to this interrogatory to the extent that it is overly broad, unduly vague, ambiguous, susceptible to multiple meanings, and seeks information that is not relevant to this case.  Moreover, Defendant objects to this interrogatory to the extent that it seeks information that is confidential and subject to privilege.  Notwithstanding these objections and without waiving same, Defendant is affiliated with Queens Hospital Center.

2362780.1

**INTERROGATORY NO. 10:  State for each person who directly or indirectly was involved in the care or treatment of the plaintiff alleged in the Complaint:**
    **a. That person's full name and current residence address;**
    **b. The name and current address of that person's employer;**
    **c. The date(s) of such person's care or treatment, including a description of the care or treatment; and**
    **d. The name and current address of any other individual present when the care or treatment was rendered.**

**RESPONSE NO. 10:**  Defendant objects to this interrogatory to the extent that it is overly broad, unduly vague, ambiguous, and susceptible to multiple meanings.  Defendant further objects to the extent this interrogatory seeks information that is confidential and protected by privilege. Notwithstanding these objections, Defendant is unaware of persons involved with the plaintiff's treatment alleged in the Complaint, other than himself and those individuals whose names are contained within Plaintiff's medical records.

**INTERROGATORY NO. 11:  Were any photographs, movies and/or videotapes taken of the plaintiff or of the procedures complained of? If so, state the date(s) on which such photographs, movies and/or videotapes were taken, who is displayed therein, who now has custody of them, and the name, address, occupation and employer of the person taking them.**

**RESPONSE NO. 11:**  Defendant objects to this interrogatory on the grounds that it is overly broad, ambiguous, duplicative, unduly burdensome, and seeks confidential information. Notwithstanding these objections and without waiver thereof, ultrasound images were taken during Plaintiff's treatment with the Defendant and copies of the images were provided to plaintiff's counsel as they are included in the medical records maintained by Defendant. Apart from ultrasound imaging, Defendant is not in possession of materials responsive to this demand.

**INTERROGATORY NO. 12:  Have you (or has anyone acting on your behalf) had any conversations with any person at any time with regard to the manner in which the care and treatment alleged in the complaint was provided, or have you overheard any statement made by any persons at any time with regard to the injuries complained of by the plaintiff or the manner in which the care and treatment alleged in the complaint was provided? If so, state.**
    **a. The date or dates of such conversation(s) and/or statements(s);**
    **b. The place of such conversation(s) and/or statement(s);**
    **c. All persons present for the conversation(s) and/or statement(s);**
    **d. The matters and things stated by the person in the conversation(s) and/or statement(s);**
    **e. Whether the conversation(s) was oral, written and/or recorded; and**
    **f. Who has possession of the statement(s) if written and/or recorded.**

**RESPONSE NO. 12:**  Defendant objects to this interrogatory as overbroad, unduly burdensome, susceptible to multiple meanings, and duplicative.  Defendant further objects to the extent this interrogatory seeks production of materials subject to privilege, including the attorney-client privilege, attorney work product privilege, and documents generated in anticipation of litigation.

**INTERROGATORY NO. 13:  Do you have any information:**
> **a. That any plaintiff was, within the 10 years immediately prior to the care and treatment alleged in the complaint, confined in a hospital and/or clinic, treated by a physician and/or other health professional, or x-rayed for any reason other than personal injury? If so, state the name of each plaintiff so involved, the name and address of each such hospital and/or clinic, physician, technician and/or other health care professional, the approximate date of such confinement or service and state the reason for such confinement or service.**
>
> **b. That any plaintiff has suffered any serious personal injury and/or illness within 10 years prior to the date of the occurrence? If so, state the name of each plaintiff so involved and state when, where and how he or she was injured and/or ill and describe the injuries and/or illness suffered.**
>
> **c. That any plaintiff has suffered any serious personal injury and/or illness since the date of the occurrence? If so, state the name of each plaintiff so involved and state when, where and how he or she was injured and/or ill and describe the injuries and/or illness suffered.**
>
> **d. That any other suit has been filed for any plaintiff's personal injuries? If so, state the name of each plaintiff involved, the nature of the injuries claimed, the court(s) and caption(s) in which filed, the year(s) filed, and the title(s) and docket number(s) of the suit(s).**
>
> **e. That any claim for workers' compensation benefits has been filed for any plaintiff? If so, state the name and address of the employer, the date(s) of the accident(s), the identity of the insurance company that paid any such benefits and the case number(s) and jurisdiction(s) where filed.**

**RESPONSE NO. 13:**  Defendant objects to this interrogatory to the extent that it is overly broad, unduly vague, ambiguous, and susceptible to multiple meanings.  It is unknown what plaintiff means by the term "serious personal injury/illness" and "date of the occurrence" which are not explained nor defined.  Defendant further objects to this interrogatory on the grounds that it seeks information in the possession of, known to, or otherwise equally available to the plaintiff.

**INTERROGATORY NO. 14:  Pursuant to Fed. Rules of Civ. Procedure, provide the name and address of each witness who will testify at trial and all other information required for each witness.**

**RESPONSE NO. 14:**  Defendant objects to this interrogatory as premature.  To date, the only witness who will be called at trial is the defendant and defendant's expert(s) if/when experts are retained.  Since discovery has not been completed, Defendant reserves his right to supplement this response.

**INTERROGATORY NO. 15:  Identify any statements, information and/or documents known to you and requested by any of the foregoing interrogatories which you claim to be work product or subject to any common law or statutory privilege, and with respect to each interrogatory, specify the legal basis for the claim as required by Fed. Rules of Civ. Procedure.**

**RESPONSE NO. 15:** Defendant objects to this interrogatory to the extent that it is susceptible to multiple meanings, duplicative, and seeks information already provided in the responses above. Defendant further objects to this interrogatory to the extent that it seeks to circumvent the protections of the asserted privileges in the responses contained above.

**INTERROGATORY NO. 16:** **List the name and address of all persons (other than yourself and persons heretofore listed) who have knowledge of the facts of the care and treatment complained of in the complaint filed herein and/or of the injuries claimed to have resulted therefrom.**

**RESPONSE NO. 16:** Defendant objects to this interrogatory on the grounds that it is duplicative, overly broad, ambiguous, and unduly burdensome. Defendant further objects to this interrogatory because it seeks information from third parties and information not within his possession, custody, control, or personal knowledge. Defendant is not aware of the names or addresses of individuals with knowledge of the facts described in the Complaint apart from the parties and the names of providers that appear in plaintiff's medical records.

**PLEASE TAKE FURTHER NOTICE** that, defendant reserves the right to supplement and/or amend the above responses at any time prior to and including the trial of this action.

Dated: White Plains, New York
        January 25, 2022

Respectfully submitted,
HEIDELL, PITTONI, MURPHY & BACH, LLP

By: _____
    BIANCA M. VAN DEUSEN (BVD 7066)
    81 Main Street
    White Plains, New York 10601
    (914) 559-3100
    *bvandeusen@hpmb.com*

*Attorneys for Defendant*
DAVID DENNIS KIM, M.D.

TO:  **VIA E-MAIL - *jae@lawjsl.com***
     Jae Lee, Esq.
     JSL LAW OFFICES, P.C.
     *Attorneys for Plaintiff*
     626 RXR Plaza
     Uniondale, NY 11556

2362780.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

MINHYE PARK,

                    Plaintiff,

    -against-

DAVID DENNIS KIM, M.D.,

                    Defendant.

--------------------------------------------------------X

Index No.:  1:20-cv-02636

**RESPONSE TO
PLAINTIFF'S SECOND SET
OF INTERROGATORIES**

Defendant, DAVID DENNIS KIM, M.D., by his attorneys, HEIDELL, PITTONI,

MURPHY & BACH, LLP, upon information and belief, responds to the Plaintiff's Second Set of

Interrogatories dated January 18, 2021, but not received until December 14, 2021, as follows:

## RESPONSES

**INTERROGATORY NO. 1:  State the following information pertaining to Defendant:**
    **a. Full name and any other name(s) by which he has been known;**
    **b. Date of birth;**
    **c. Residence/home address in the past 5 years;**
    **d. All countries in which Defendant holds citizenship in the past 10 years;**
    **e. Social Security Number;**
    **f. Index number and venue for all other litigations to which he has been a party last 10 years;**

**RESPONSE NO. 1:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement.  Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.  Defendant further objects to this interrogatory as duplicative, overbroad, and to the extent that it seeks production of materials subject to privilege, including the attorney-client privilege, attorney work product privilege, and documents generated in anticipation of litigation.  Notwithstanding these objections and without waiver thereof, this interrogatory has been answered, in part, in Defendant's Response to Plaintiff's First Set of Interrogatories.

**INTERROGATORY NO. 2:  Identify any and all evidence to support the affirmative defense that the Plaintiff assumed the risk of her injuries.**

2511005.1

**RESPONSE NO. 2:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement.  Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.  Defendant further objects to this interrogatory on the grounds that it seeks information in the possession of, known to, or otherwise equally available to the plaintiff.  Defendant also objects to this interrogatory as premature. Discovery is still ongoing and further discovery, legal research, and analysis may supply additional information.  Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 3:  Identify any and all evidence to support the affirmative defense that the Plaintiff was contributory negligent, or that she failed to mitigate her damages.**

**RESPONSE NO. 3:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement.  Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.  Defendant further objects to this interrogatory on the grounds that it seeks information in the possession of, known to, or otherwise equally available to the plaintiff.  Defendant also objects to this interrogatory as premature. Discovery is still ongoing and further discovery, legal research, and analysis may supply additional information.  Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 4:  Identify any and all evidence to support the affirmative defense that the Plaintiff's case fails to state a claim upon which relief can be granted.**

**RESPONSE NO. 4:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement.  Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.  Pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure, Defendant further objects to the extent that this request is premature and involves both questions of law and fact that cannot be resolved until the completion of additional discovery.  Discovery is not complete, and further discovery, legal research, and analysis may supply additional information.  Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 5:  Identify any and all evidence to support the Defendant successfully removed the fetus from Plaintiff's womb on or about November 27, 2017 during the course of a medical procedure that Dr. Kim performed on the Plaintiff at Queens Surgical Care Center in Flushing, New York (hereinafter referred to as "surgical procedure").**

**RESPONSE NO. 5:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement.  Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.

**INTERROGATORY NO. 6:  State whether the Defendant knew and/or should have known that the fetus was not successfully removed and left alive after the surgical procedure.**

**RESPONSE NO. 6:** Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement. Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.

**INTERROGATORY NO. 7: State whether the Defendant failed to inform the Plaintiff about the botched fetal surgery and the fetus left alive after the surgery on November 27, 2017.**

**RESPONSE NO. 7:** Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement. Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021. Defendant further objects to this interrogatory because it is ambiguous and unclear as to the information sought.

**INTERROGATORY NO. 8: State whether the Defendant informed the Plaintiff that she required an immediate re-surgery to remove debris left in the Plaintiff's womb after the surgery.**

**RESPONSE NO. 8:** Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement. Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021. Defendant further objects to this interrogatory because it is ambiguous and unclear as to the information sought.

**INTERROGATORY NO. 9: Identify any and all evidence to support the Defendant obtained an informed consent of the risks and procedures.**

**RESPONSE NO. 9:** Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement. Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021. Pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure, Defendant further objects to the extent that this request is premature and involves both questions of law and fact that cannot be resolved until the completion of additional discovery. Discovery is not complete, and further discovery, legal research, and analysis may supply additional information. Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 10: State whether as a direct and proximate result of the Defendant's failure of the removal of the fetus, and failure to inform the fetus was left alive after the surgery on November 27, 2017 and the Plaintiff of any diagnose made, treatment prescribed, and risks and alternatives to said course of treatment, the Plaintiff required immediate diagnoses at MIRAE and ROSEMOM, and a surgical care that was performed at ROSEMOM in South Korea.**

**RESPONSE NO. 10:** Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement. Plaintiff has already served the maximum allowed

interrogatories in her First Set of Interrogatories dated February 9, 2021. Defendant further objects to this interrogatory because it is ambiguous and unclear as to the information sought. Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order.

**INTERROGATORY NO. 11: State whether the follow-up medical care the Plaintiff received by ROSEMOM was medically necessary and reasonable in light of the injuries the Plaintiff received during the operation performed by Defendant on or November 27, 2017.**

**RESPONSE NO. 11:** Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement. Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021. Pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure, Defendant further objects to the extent that this request is premature and involves both questions of law and fact that cannot be resolved until the completion of additional discovery. Discovery is not complete, and further discovery, legal research, and analysis may supply additional information. Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order. Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 12: State whether as a direct and proximate result of the fetus left alive in the Plaintiff's womb by the Defendant, the Plaintiff required medical care and treatment from ROSEMOM, which included the removal of the alive fetus on or about December 27, 2017.**

**RESPONSE NO. 12:** Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement. Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021. Pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure, Defendant further objects to the extent that this request is premature and involves both questions of law and fact that cannot be resolved until the completion of additional discovery. Discovery is not complete, and further discovery, legal research, and analysis may supply additional information. Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order. Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 13: State whether the medical bills that were generated by the additional care the Plaintiff received following the failure to removal the fetus and left the fetus alive were fair and reasonable and directly related to the failure to remove the fetus.**

**RESPONSE NO. 13:** Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement. Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021. Pursuant to Rule 33(a)(2)

of the Federal Rules of Civil Procedure, Defendant further objects to the extent that this request is premature and involves both questions of law and fact that cannot be resolved until the completion of additional discovery.  Discovery is not complete, and further discovery, legal research, and analysis may supply additional information.  Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order.  Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 14:  State whether the Defendant has no evidence that any of the Plaintiff's medical care and treatment that she received from ROSEMOM relative to her injury at bar was unreasonable or unnecessary.**

**RESPONSE NO. 14:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement.  Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.  Pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure, Defendant further objects to the extent that this request is premature and involves both questions of law and fact that cannot be resolved until the completion of additional discovery.  Discovery is ongoing, and further discovery, legal research, and analysis may supply additional information.  Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order.  Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 15:  State whether the Defendant has no evidence that any of the Plaintiff's medical diagnosis and care on or about December 19, 2017 that she received from MIRAE for a second opinion relative to her injury at bar was unreasonable or unnecessary.**

**RESPONSE NO. 15:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement.  Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.  Pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure, Defendant further objects to the extent that this request is premature and involves both questions of law and fact that cannot be resolved until the completion of additional discovery.  Discovery is ongoing, and further discovery, legal research, and analysis may supply additional information.  Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order.  Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 16:  State whether the Defendant has no evidence that any of the Plaintiff's travelling expenses of approximately $3,000.00 for an urgent flight ticket during the holidays peak time to South Korea as soon as the Defendant forced the Plaintiff to undergo an additional corrective surgery on or about December 17, 2017 were unfair, unreasonable, or inflated.**

**RESPONSE NO. 16:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a

prior Court Order or other agreement. Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021. Pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure, Defendant further objects to the extent that this request is premature and involves both questions of law and fact that cannot be resolved until the completion of additional discovery. Discovery is ongoing, and further discovery, legal research, and analysis may supply additional information. Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order. Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 17: State whether it's possible that the Plaintiff was disabled from gainful employment due to the injuries sustained on November 27, 2017.**

**RESPONSE NO. 17:** Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement. Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021. Pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure, Defendant further objects to the extent that this request is premature and involves both questions of law and fact that cannot be resolved until the completion of additional discovery. Discovery is ongoing, and further discovery, legal research, and analysis may supply additional information. Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order. Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 18: State whether it's possible that the Plaintiff has a temporary and/or permanent injury as a direct result of the Defendant's failure to remove the fetus and left fetus alive in the Plaintiff's womb.**

**RESPONSE NO. 18:** Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement. Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021. Pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure, Defendant further objects to the extent that this request is premature and involves both questions of law and fact that cannot be resolved until the completion of additional discovery. Discovery is ongoing, and further discovery, legal research, and analysis may supply additional information. Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order. Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 19: State whether the Defendant failed to examine the tissue obtained from the suction curettage to determine the volume of tissue removed or the presence of chorionic villi.**

**RESPONSE NO. 19:** Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement. Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.

**INTERROGATORY NO. 20:  State whether the Defendant failed to inform the Plaintiff of the differential risk of failed suction curettage from 5 weeks to 7 weeks**

**RESPONSE NO. 20:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement.  Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.  Pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure, Defendant further objects to the extent that this request is premature and involves both questions of law and fact that cannot be resolved until the completion of additional discovery.  Discovery is ongoing, and further discovery, legal research, and analysis may supply additional information.  Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order.  Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 21:  State whether the Defendant failed to examine the aspirated tissue prior to the Plaintiff's departure from the facility.**

**RESPONSE NO. 21:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement.  Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.  Defendant further objects to the extent that this interrogatory is duplicative of previous interrogatories.  Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order.  Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 22:  State whether the Defendant failed to inform the Plaintiff of the pathology report in a timely manner.**

**RESPONSE NO. 22:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement.  Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.  Defendant further objects to the extent that this interrogatory is duplicative of previous interrogatories.  Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order.  Defendant reserves the right to supplement this response.

**INTERROGATORY NO. 23:  State whether the history of prior abortion was not a risk factor for failed termination of pregnancy.**

**RESPONSE NO. 23:**  Defendant objects to this demand on the grounds that pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, parties are limited to 25 interrogatories absent a prior Court Order or other agreement.  Plaintiff has already served the maximum allowed interrogatories in her First Set of Interrogatories dated February 9, 2021.  Defendant further objects

to the extent that this interrogatory is duplicative of previous interrogatories.  Defendant also objects to the extent that this interrogatory seeks disclosure of expert opinions, which will be provided per the provisions of the Federal Rules of Civil Procedure and/or court order.  Defendant reserves the right to supplement this response.

**PLEASE TAKE FURTHER NOTICE** that, Defendant reserves the right to supplement and/or amend the above responses at any time prior to and including the trial of this action.

Dated:  White Plains, New York
January 25, 2022

Respectfully submitted,
HEIDELL, PITTONI, MURPHY & BACH, LLP

By: _____
BIANCA M. VAN DEUSEN (BVD 7066)
81 Main Street
White Plains, New York 10601
(914) 559-3100
*bvandeusen@hpmb.com*

*Attorneys for Defendant*
DAVID DENNIS KIM, M.D.

TO:     **VIA E-MAIL - *jae@lawjsl.com***
Jae Lee, Esq.
JSL LAW OFFICES, P.C.
*Attorneys for Plaintiff*
626 RXR Plaza
Uniondale, NY 11556

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

MINHYE PARK,

                            Plaintiff,

      -against-

DAVID DENNIS KIM, M.D.,

                         Defendant.

--------------------------------------------------------X

Index No.: 1:20-cv-02636

**RESPONSE TO
PLAINTIFF'S FIRST
REQUEST FOR
<u>PRODUCTION</u>**

         Defendant, DAVID DENNIS KIM, M.D., by his attorneys, HEIDELL, PITTONI,

MURPHY & BACH, LLP, upon information and belief, responds to the Plaintiff's First Request for

Production, dated December 13, 2021, as follows:

<u>RESPONSES</u>

**DEMAND NO. 1:**    **Produce the names of experts and their exports reports.**

**RESPONSE NO. 1:**  Defendant objects to this demand as premature.  Expert disclosure, including an expert report, will be made at the appropriate time, pursuant to the Federal Rules of Civil Procedure, Local Rules of the Eastern District of New York, and court order.

**DEMAND NO. 2:  A curriculum vitae setting forth the qualifications of any experts Defendant expects to call at the time of trial**

**RESPONSE NO. 2:**  Defendant objects to this demand as premature.  Notwithstanding this objection and without waiver thereof, Defendant's expert disclosure will include a curriculum vitae for any retained experts.  Expert disclosure will be made at the appropriate time, pursuant to the Federal Rules of Civil Procedure, Local Rules of the Eastern District of New York, and court order.

**DEMAND NO. 3:  Produce any and all documents in defendant's possession regarding the Plaintiff's prior abortion.**

**RESPONSE NO. 3:**  Defendant objects to this demand on the grounds that the demand is overly broad, ambiguous, and unduly burdensome.  Defendant further objects to this demand to the extent that it is not reasonably calculated to lead to admissible evidence.  Notwithstanding these objections and without waiver thereof, Defendant is not aware of any materials responsive to this demand other than those contained within Plaintiff's medical records.  Defendant is not otherwise currently in possession of any other materials responsive to this demand.

**DEMAND NO. 4:**     All documents provided by Defendant to any expert whom Defendant intends to call as a witness(es) at trial and all documents concerning any facts or opinions about which each such expert(s) is expected to testify.

**RESPONSE NO. 4:**  Defendant objects to this demand as premature.  Expert disclosure, including an expert report, will be made at the appropriate time, pursuant to the Federal Rules of Civil Procedure, Local Rules of the Eastern District of New York, and court order.

**DEMAND NO. 5:**     Copies of any and all written or other documentation Defendant's expert(s) will reply upon in forming his or her opinion.

**RESPONSE NO. 5:**  Defendant objects to this demand as premature.  Expert disclosure including an expert report will be made at the appropriate time, pursuant to the Federal Rules of Civil Procedure, Local Rules of the Eastern District of New York, and court order.

**PLEASE TAKE FURTHER NOTICE** that, defendant reserves the right to supplement and/or amend the above responses at any time prior to and including the trial of this action.

Dated:  White Plains, New York
            January 25, 2022

Respectfully submitted,
HEIDELL, PITTONI, MURPHY & BACH, LLP

By:_____
BIANCA M. VAN DEUSEN (BVD 7066)
81 Main Street
White Plains, New York 10601
(914) 559-3100
*bvandeusen@hpmb.com*

*Attorneys for Defendant*
DAVID DENNIS KIM, M.D.

TO:     **VIA E-MAIL - *jae@lawjsl.com***
          Jae Lee, Esq.
          JSL LAW OFFICES, P.C.
          *Attorneys for Plaintiff*
          626 RXR Plaza
          Uniondale, NY 11556

2511472.1

## Kulka, Rosa

**From:** Kulka, Rosa
**Sent:** Tuesday, January 25, 2022 3:34 PM
**To:** 'jae@lawjsl.com'
**Cc:** Van Deusen, Bianca M.
**Subject:** Minhye Park; Index No.:  1:20-cv-02636; Our File No.: 778-1018
**Attachments:** HPMB_NY1-#2514657-v1-PARK_-_Response_to_PC_s_1st_Request_for_Production.PDF;
HPMB_NY1-#2514656-v1-PARK_-_Response_to_PC_s_2nd_Set_of_Interogatories_.PDF;
HPMB_NY1-#2514655-v1-PARK_-_Response_to_PCs_First_Interrogatories_.PDF


Dear Counselor:

On behalf of Bianca Van Deusen, please see the attached Responses with respect to the above matter.

Thank you.

**Kulka, Rosa**

---

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | 'jae@lawjsl.com' |
| **Sent:** | Tuesday, January 25, 2022 3:34 PM |
| **Subject:** | Relayed: Minhye Park; Index No.:  1:20-cv-02636; Our File No.: 778-1018 |

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

'jae@lawjsl.com' (jae@lawjsl.com)

Subject: Minhye Park; Index No.: 1:20-cv-02636; Our File No.: 778-1018

# EXHIBIT Q

# JSL Law Offices, P.C.
## 626 RXR PLAZA, Uniondale, NY 1156
Tel:  (718) 461-8000
Fax: (866) 449-8003

_____

January 28, 2022

Via E-mail
Heidell, Pittoni, Murphy, & Bach, LLP
99 Park Avenue, 7th Floor
New York, NY 10016

Re: Minhye Park v. David Dennis Kim, M.D.
20 CV 02636

**DEMAND FOR SUPPLEMENTATION OF DEFENDANT'S DISCOVERY RESPONSES AND RESPONSE**
**TO DEFENDANT'S THIRD DEMAND FOR PRODUCTION OF DOCUMENTS**

Dear Ms. Gil:

This letter concerns outstanding discovery in this matter.  We are writing to address deficiencies in the Defendant's Response to Plaintiff's First Discovery Demand dated December 10, 2021, and several other discovery demands to which the Plaintiff has not received a response, including Plaintiff's First Request for Production to Defendant dated December 13, 2021, Plaintiff's First and Second Sets of Interrogatories, respectively dated February 9, 2021, and December 13, 2021.  We are writing to demand supplementation of Plaintiff's December 10, 2021 discovery demand as set forth below, and responses to the other enumerated demands above forthwith.  This letter should be considered a good faith effort to resolve these matters and avoid the need to make a motion to compel discovery. If we do not receive such shortly, we intend to file a motion above.

**Deficiencies in Defendant's Response to Plaintiff's First Discovery Demand**
1. We demand supplementation of Demands no. 1,  9 j, 9 k,  and 9 p which request expert reports and documentation.  Defendant's counsel has previously represented, contrary to the response, that an expert has been consulted by Defendant.  We reiterate the demand for this information.
2. With regard to Demand no. 4, Defendant has already been provided with a HIPAA compliant authorization for Plaintiff's medical records. In order to avoid unnecessary disputes, the authorization is attached hereto.
3. With regard to Demand no. 9, Plaintiff is seeking information as to whether a settlement or release has occurred with respect to anyone other than Defendant who may be held liable in this matter.  Either produce said information, or, if you allege that this information is privileged, kindly provide a privilege log related thereto which, among other things, identifies the privilege you are relying on.

4. With regard to Demand no. 9a, Plaintiff is entitled to know if Defendant claims to have statements made by Plaintiff that are contrary to her interests in this matter. If you claim that such information is privileged, please provide a privilege log.

5. With regard to Demand 9c, while we do not agree with your characterization as such, Plaintiff is entitled to interpose a catch all demand for items related to Plaintiff's claims. Once again, if you claim that any such information is privileged, please provide a privilege log.

6. With regard to 9d, Plaintiff is entitled to discovery on Defendant's educational background. If you are not in possession of the information that is demanded, kindly provide an authorization for the release of same.

7. With regard to 9g, Plaintiff is entitled to discovery on the malpractice policy.

8. With regard to 9h and i, Plaintiff is requesting information regarding previous/other malpractice claims against Defendant. Kindly produce this information.

9. With regard to 9u, Plaintiff is entitled to insurance information. If you allege this is privileged, please provide a privilege log.

10. With regard to 9w, kindly identify, along with documentation, any hospitals where Defendant has or had privileges for the past 10 years and whether such privileges were withdrawn by any such hospitals. Plaintiff is entitled to information concerning Defendant's practice history.

**Plaintiff's Response to Defendant's Third Demand for Production of Documents**

1. Plaintiff's travel document: The air ticket for 11/14/2017 is annexed hereto. ( Note: However, a record of the air ticket for 12/17/2017 is not available at this moment as the plaintiff went to JFK Airport to book a flight to South Korea and had to wait for a ticket for several hours being that there were no seats and the prices for the tickets were very high due to it being the peak of the season. Plaintiff ultimately paid over $3,000 to obtain a ticket to fly to South Korea.)

2. Plaintiff's expert information is annexed hereto.

3. A HIPAA compliant authorization is annexed hereto.

4. Plaintiff's lost wage is based on The Constitution of the Republic of Korea Article 32 and Minimum Wage Act in S. Korea, or the gross weekly wages for an employee of the same class.

Respectfully submitted,

Jae S. Lee

# EXPERT REPORT

## CASE: PARK V. KIM

Submitted by:

**Dr. John M. Garofalo, MD, FACOG**

## Reviewed Documents

1. EXHIBIT B _ D med records, p.31
2. EXHIBIT C _ med rec. MIRAE
3. EXHIBIT D _ med rec ROSEMOM
4. Medical Records _ Queens Surgical Care Center (Defendant Dr. Kim) _11.27, 2018


## Clinical Summary

Plaintiff visited Defendant for the first time on November 16, 2017 as her symptoms indicated that she was likely pregnant. Defendant told Plaintiff that it's too early to determine whether Plaintiff was pregnant or not, and asked Plaintiff to come later. During her second visit on November 21, 2017, Defendant confirmed that the plaintiff was indeed pregnant and performed a suction curettage on November 27, 2017. At the time of the procedure, the defendant failed to examine the tissue obtained from the suction curettage to determine the volume of tissue removed or the presence of chorionic villi.  Approximately one week after the suction curettage, a pathology report indicated that there was no evidence of chorionic villi or embryonic tissue in the sample.

On December 13, 2017, Defendant Dr. Kim performed an ultrasound examination that revealed an eight week viable intrauterine pregnancy. Dr. Kim then admitted his failure to terminate plaintiff's pregnancy. On December 19, 2017,  two physicians in South Korea examined the plaintiff, including the use of ultrasound test, and confirmed a viable intrauterine pregnancy. on December 27, 2017, a repeat suction curettage was performed.

The past history of prior first trimester abortions approximately 10 years ago was appreciated.


## Background

Suction curettage  is a safe and efficacious procedure for first trimester termination of pregnancy. The failure rate of the procedure is inversely related to the gestational age at the time the procedure is performed. At five weeks since the last menstrual period (LMP) the failure rate is 1/100. This decreases to 1/500 at 7 weeks since LMP.  Following suction curettage, it is incumbent upon the surgeon to evaluate the tissue removed from the uterus in order to ascertain the completeness of the procedure so as to rule out persistent pregnancy and a ectopic pregnancy. The standard of care requires that the tissue is examined by "floating" and backlighting the tissue. This standard was clearly documented in the National Abortion Federation in 2015[1] as follows:

> Standard 13.1. Termination of pregnancy must be confirmed prior to the woman leaving the facility or further evaluation must be initiated.
> Recommendation 13.1.1. Evacuated uterine contents should be examined before the woman leaves the facility.
> Recommendation 13.1.2. In first-trimester terminations, flotation of tissue

[1] Deutsch FE. 66727 NAF S1-National Abortion National Abortion Federation Clinical Policy Guidelines.

Page 2

*should be used to identify products of conception, including gestational sac.*
*Option 13.1.2.1. Backlighting of tissue may be useful.*
*Option 13.1.2.2. Sending the evacuated uterine contents for additional*
*pathological examination is not required.*
*Standard 13.2. When insufficient tissue or incomplete products of conception are*
*obtained, the patient must be reevaluated.*
*Recommendation 13.2.1. Re-aspiration, serial quantitative Hcg, and/or*
*ultrasonographic examination should be*
*considered.*
*Recommendation 13.2.2. In the first trimester, ectopic pregnancy should be*
*considered.*

## Expert Opinion

It is my opinion that the defendant deviated from the standard of care as follows:

1. The defendant failed to inform the plaintiff of the differential risk of failed suction curettage from 5 weeks to 7 weeks.  If she had been aware of the increased risk of failure, she would likely have deferred the procedure for 1-2 weeks.
2. The defendant failed to examine the aspirated tissue prior to the plaintiff's departure from the facility. If the tissue had been examined, the patient could have been offered an repeat suction curettage at that time or additional testing to rule out persistent pregnancy.
3. The defendant failed to inform the plaintiff of the pathology report in a timely manner. If she had been aware of the absence of chorionic villi, she would have had the option to undergo a more prompt suction curettage.

The history of prior abortion was not a risk factor for failed termination of pregnancy.

## Expert Qualifications

*In regarding my expertise to opine in this case, I have been actively involved providing surgical termination of pregnancy in both the first and second trimester for over 40 years. I am a board certified Obstetrician/Gynecologist. I am licensed to practice in Connecticut, and have recently been the Director of Minimally Invasive Gynecology, the Associate Director of Gynecology and an Attending Physician in Obstetrics and Gynecology at Norwalk Hospital, in Norwalk, Connecticut. I have been appointed as an assistant clinical professor of Obstetrics and Gynecology and Reproductive Sciences at Larner College of Medicine, University of Vermont and Assistant Clinical Professor of Obstetrics and Gynecology at Ross University. I practiced OB/GYN for more than 38 years until the time of my retirement in December 2020. I am familiar with the applicable standards of care for medical and surgical termination of pregnancy as well as the management of the associated potential complications.*

**Concluding Statements**

*I believe within a reasonable degree of medical certainty that the care provided to Dr. Kim was below the accepted standard of care for the management of first trimester termination of pregnancy. This opinion is limited by the limited clinical records available for my review. I reserve the right to amend to this report in the event any additional materials become available.*

Respectfully submitted by,

**Dr. John M. Garofalo, M.D. FACOG**                    9/12/2021

(TV CLUB-AGEN)

# 전자 항공권 발행 확인서
## E-Ticket Passenger Itinerary & Receipt



담당자 : 에이젠항공 장경숙 실장   TEL : 02-735-0779   FAX : 02-730-3733   E-MAIL : grayline0207@naver.com

2017 / 10 / 31

## 🅢 승객 정보 (Passenger Information)

- 승객 성명 (Passenger Name)     : PARK/MINHYE MS
- 항공권 번호 (Ticket Number)     : 9885937822669
- 예약 번호 (Booking Reference)   : **(OZ 항공) TOBIYZ** (1B) IONDRT

여행자보험,
개별대비 25% 저렴하게 가입
CHUBB     에이스손해보험

## 🅢 여정 정보 (Itinerary Information)

ASIANA AIRLINES   인터넷 좌석배정

### OZ 222 ASIANA AIRLINES

ASIANA AIRLINES

| | 도시/공항 | 일자/시각 | 터미널 | 클래스 | 비행시간 | 상태 |
|---|---|---|---|---|---|---|
| **출발** | SEOUL INCHEON INT | 14NOV 10:50 | | ECONOMY/V | 14:00 | OK |
| **도착** | NEW YORK JFK | 14NOV 10:50 | TERMINAL 4 | | | |

경유지(Via) :
무료수하물(Baggage) : 2PC

좌석(Seat Number) :
운임(Fare Basis) : VLXAKU14

유효 기간 . Not Valid Before
(Validity) ˙ Not Valid After   31MAR18

### OZ 221 ASIANA AIRLINES

ASIANA AIRLINES

| | 도시/공항 | 일자/시각 | 터미널 | 클래스 | 비행시간 | 상태 |
|---|---|---|---|---|---|---|
| **출발** | NEW YORK JFK | 22NOV 13:00 | TERMINAL 4 | ECONOMY/V | 14:30 | OK |
| **도착** | SEOUL INCHEON INT | 23NOV 17:30 | | | | |

경유지(Via) :
무료수하물(Baggage) : 2PC

좌석(Seat Number) :
운임(Fare Basis) : VLXAKU14

유효 기간 . Not Valid Before
(Validity) ˙ Not Valid After   14MAY18

## 🅢 수하물 정보 (Baggage Information)

항공사별 수하물 정보 확인

BAG ALLOWANCE -ICNJFK-02P/OZ/EACH PIECE UP TO 50 POUND S/23 KILOGRAMS AND UP TO 62 LINEAR INCHES/158 LINEAR CENTI METERS BAG ALLOWANCE -JFKICN-02P/OZ/EACH PIECE UP TO 50 POUND S/23 KILOGRAMS AND UP TO 62 LINEAR INCHES/158 LINEAR CENTI METERS CARRY ON ALLOWANCE ICNJFK JFKICN-01P/OZ 01/UP TO 22 POUNDS/10 KILOGRAMS AND UP TO 45 LINEAR INCHES /115 LINEAR CENTIMETERS CARRY ON CHARGES ICNJFK JFKICN-OZ-CARRY ON FEES UNKNOWN-CONTACT CARRIER ADDITIONAL ALLOWANCES AND/OR DISCOUNTS MAY APPLY DEPENDING ON FLYER-SPECIFIC FACTORS /E.G. FREQUENT FLYER STATUS/MILITARY/

## 🅢 항공권 정보 (Ticket Information)

- 발행일/발행처 (Issue Date/Place)    : 31OCT17 / (17302401)
- 제한사항 (Restriction)              : NON-ENDS/NO-MILEUG/NO-OBCHNG
- 지불수단 (FOP/Tourcode)             : CASH / 7KUHD98T
- 운임계산 내역 (Fare Calculation)     : SEL OZ NYC411.20OZ SEL411.20NUC822.40END ROE1130.824 XFJFK4.5
- 항공운임 (Fare Amount)              : KRW 930,000
- 세금/기타비용 (Tax/Fee/Charge)       : 28000BP 40600US 6300YC 7900XY 4500XA 6400AY 12000YQ 5100XF
  ※YQ/YR/Q Code는 유류할증료 및 전쟁보험료 부담금 등 입니다.
- **항공운임 총액 (Total Amount)**      : KRW 1,040,800
- 취급 수수료(TASF)                   : KRW 100,000 / CASH

## 🅢 항공사 공지 사항 (Airline Notice)

■ 아시아나항공으로 미주구간 이용시 서비스 관련 문의는 아래 웹사이트와 주소로 접수하시기 바랍니다.

·웹사이트: http://us.flyasiana.com (Contact Us)
·주소: US Customer Center Asiana Airlines, 3530 Wilshire Blvd. Suite 1700 Los Angeles, CA 90010, US
■ 2016년 4월1일부로 예약부도위약금 (No Show Penalty)가 부과되오니 여정 변경에 유의하여 주시기 바랍니다.
■ 국제선 환불 신청 기한은 항공권 유효기간 만료일로부터 30일 이내입니다.



OCA Official Form No.: 960

## AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
### [This form has been approved by the New York State Department of Health]

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| **MINHYE PARK** | **12/15/1988** | |

Patient Address

**11 Changwon-daero 397beon-gil, Uichang-gu, Hill State Artium City Apt 104-1605, Changwon-si, gyeongsangnam**

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL and DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

7. Name and address of health provider or entity to release this information:
   **NATIONAL HEALTH INSURANCE, Mandaegongwon-gil, 14-6 KR, Gangwon-do, Wonju-si, South Korea**

8. Name and address of person(s) or category of person to whom this information will be sent:
   **Heidill, Pittoni, Murphy & Bach, LLP, 99 Park Avenue, New York, NY10016**

9(a). Specific information to be released:
   ☑ Medical Record from (insert date) **01/01/2010** to (insert date) **PRESENT**
   ☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
   ☐ Other: _____          Include: (*Indicate by Initialing*)

   _____                          _____ **Alcohol/Drug Treatment**

**Authorization to Discuss Health Information**          _____ **Mental Health Information**

   _____ **HIV-Related Information**

(b) ☐ By initialing here _____ I authorize _____
           Initials                                    Name of individual health care provider
   to discuss my health information with my attorney, or a governmental agency, listed here:

   _____
   (Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information:<br>☐ At request of individual<br>☐ Other: **LITIGATION** | 11. Date or event on which this authorization will expire:<br><br>**AT THE CONCLUSION OF LITIGATION** |
|---|---|
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

박민혜

_____          Date: __B / 21 / 2021__
Signature of patient or representative authorized by law.

\* **Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.**

**Velazquez, Bernice**

| | |
|---|---|
| **From:** | JAE LEE <jae@lawjsl.com> |
| **Sent:** | Friday, January 28, 2022 11:40 PM |
| **To:** | Gil, Alejandra R. |
| **Subject:** | 1/28/2022_ Defendant's Deficiencies & Plaintiff's supp responses |
| **Attachments:** | Letter to Heidell Pittoni Def deficiencies & P supp resp_ 1.28, 2022 .pdf; Expert Report_ John Garofalo_.pdf |

**CAUTION:** This email originated from outside the HPMB network. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT R



**HPM&B**

ATTORNEYS AT LAW

81 MAIN STREET   WHITE PLAINS, NY  10601-1711
TEL: (914) 559-3100   FAX: (914) 949-1160
WWW.HPMB.COM

**Bianca M. Van Deusen**
**Associate**
**bvandeusen@hpmb.com**

February 1, 2022

**VIA E-MAIL** - *jae@lawjsl.com*
Jae Lee, Esq.
JSL Law Offices, P.C.
626 RXR Plaza
Uniondale, New York 11556

   Re: Minhye Park v. David Dennis Kim, M.D.
     Index No.:  1:20-cv-02636-PKC-LB
     <u>Our File No.:  778-1018</u>

Dear Ms. Lee:

   Our firm represents Dr. David Dennis Kim in this action.  We are in receipt of your letter dated January 28, 2022, which requests outstanding discovery and contains responses to Defendant's Third Demand for Production of Documents.  In the letter, you state the Defendant's responses to Plaintiff's First Request for Production and First and Second Set of Interrogatories are outstanding.  Please be advised that responses to each of these documents were served via email on January 25, 2022.

   In response to the alleged deficiencies in Defendant's Response to Plaintiff's First Discovery Demand, please see below for Defendant's supplemental responses:

   **DEMAND:  We demand supplementation of Demands no. 1, 9 j, 9 k, and 9 p which request expert reports and documentation. Defendant's counsel has previously represented, contrary to the response, that an expert has been consulted by Defendant. We reiterate the demand for this information.**

   Expert disclosure, including an expert report containing the information as required by Rule 26(2)(B) of the Federal Rules of Civil Procedure, will be provided under separate cover.

   **DEMAND:  With regard to Demand no. 4, Defendant has already been provided with a HIPAA compliant authorization for Plaintiff's medical records. In order to avoid unnecessary disputes, the authorization is attached hereto.**

2517534.1

HEIDELL, PITTONI, MURPHY & BACH, LLP

NEW YORK   |   CONNECTICUT   |   WESTCHESTER   |   LONG ISLAND



Defendant previously provided a copy of all of plaintiff's medical records, including billing records, maintained by the Defendant on February 10, 2021.

**DEMAND:  With regard to Demand no. 9, Plaintiff is seeking information as to whether a settlement or release has occurred with respect to anyone other than Defendant who may be held liable in this matter. Either produce said information, or, if you allege that this information is privileged, kindly provide a privilege log related thereto which, among other things, identifies the privilege you are relying on.**
**ORIGINAL DEMAND NO. 9: All documents concerning any releases, settlement or other agreement, formal or informal, pursuant to which the liability of any person for any injury or damage arising out of the occurrence has been limited, reduced, or released in any manner.**

Defendant renews his previous objections to the extent that this Demand is still overly broad, unduly vague, ambiguous, and susceptible to multiple meanings.  Defendant also objects to this demand to the extent that it seeks information that would be in plaintiff's possession, not Defendant's.  Defendant has not settled with anybody for the claims at issue in this matter.

**DEMAND:  With regard to Demand no. 9a, Plaintiff is entitled to know if Defendant claims to have statements made by Plaintiff that are contrary to her interests in this matter. If you claim that such information is privileged, please provide a privilege log.**
**ORIGINAL DEMAND No. 9(a): documents, transcripts, tape recordings, or recordings of any kind relating to statements given by plaintiff and/or her representatives, agents or employees, concerning this incident.**

Defendant previously objected to this demand to the extent that it is overly broad, unduly vague, ambiguous, susceptible to multiple meanings, and demands information that is not relevant to this case.  Defendant further objected to the demand to the extent that it seeks production of materials subject to privilege, including the attorney work product privilege and documents generated in anticipation of litigation.  Notwithstanding these objections, Defendant previously responded that he was not aware of any discoverable materials responsive to this demand other than the statements contained in the plaintiff's medical records and her deposition testimony. Defendant renews these objections and response.

**DEMAND:  With regard to Demand 9c, while we do not agree with your characterization as such, Plaintiff is entitled to interpose a catch all demand for items related to Plaintiff's claims. Once again, if you claim that any such information is privileged, please provide a privilege log.**
**ORIGINAL DEMAND NO. 9(c):  Copies of all documents, audio tapes, computer generated evidence, photographs, and all other demonstrable items relative to the case at bar.**

Defendant previously objected to this demand as overbroad because it is a "catch-all" demand that seeks any and all documents in Defendant's possession related to this legal action

Jae Lee, Esq.
Re:  Minhye Park v. David Dennis Kim, M.D.
February 1, 2022
Page 3



without any specificity.  Defendant also objected to this demand to the extent that it is not reasonably calculated to lead to admissible evidence because it seeks potentially confidential and otherwise privileged material protected from disclosure by the attorney-client privilege and attorney work-product privilege.  Defendant renews these objections.  Defendant is not required to marshal all of his evidence in this case nor to produce a privilege log for each document or demonstrable item relative to this case.

**DEMAND:  With regard to 9d, Plaintiff is entitled to discovery on Defendant's educational background. If you are not in possession of the information that is demanded, kindly provide an authorization for the release of same.**
**ORGINAL DEMAND NO. 9(d): Copies of your transcripts from any institution of higher education, i.e. college, university, medical school.**

Defendant previously objected to this demand to the extent that it is unduly burdensome and not reasonably calculated to lead to admissible evidence and seeks material that has no bearing on the allegations or damages in this case.  Notwithstanding these objections and without waiver of same, Defendant responded that he was not in possession of materials responsive to this demand.  Defendant renews these objections.  Defendant's transcripts are wholly irrelevant to this case.  Additionally, Plaintiff was provided the opportunity at Defendant's deposition to question Dr. Kim regarding his educational background and grades at any institutions of higher education.  Annexed as a supplement to this response is Dr. Kim's current CV which lists his educational background.

**DEMAND:  With regard to 9g, Plaintiff is entitled to discovery on the malpractice policy.**
**ORIGINAL DEMAND NO. 9(g): Copies of all applications and renewal of applications for any medical malpractice liability insurance policies for the last ten years.**

Defendant has previously provided insurance information and refers Plaintiff to Defendant's Initial Rule 26 Disclosures, which were served on November 19, 2020.  To the extent Plaintiff seeks applications for any medical malpractice liability insurance policies, Defendant renews his previous objections.  Defendant objects to this demand on the grounds that the demand is overly broad, ambiguous, and unduly burdensome.  Defendant further objects to this demand to the extent that it is not reasonably calculated to lead to admissible evidence and seeks potentially confidential material.  Additionally, Defendant objects to the relevancy of the demand because the disclosure of the relevant policy at issue in this case has already been provided.

**DEMAND:  With regard to 9h and i, Plaintiff is requesting information regarding previous/other malpractice claims against Defendant. Kindly produce this information.**
**ORIGINAL DEMAND NO. 9(h):  Copies of any letters, correspondence, e-mail correspondence, from any patient and his /her legal representative that placed you on notice of a possible medical malpractice claim**
**ORIGINAL DEMAND NO. 9(i): Copies of all complaints, pleadings, discovery documents, depositions, answers to interrogatories, response to demands for production of**

Jae Lee, Esq.
Re:  Minhye Park v. David Dennis Kim, M.D.
February 1, 2022
Page 4



**documents, court orders, that pertain to any administrative, civil, traffic, and criminal case, wherein you were/are a party.**

Defendant previously objected to these demands and renews those objections.  Defendant objects to these demands on the grounds that the demands are overly broad, ambiguous, and unduly burdensome.  Defendant further objects to these demands to the extent that they are not reasonably calculated to lead to admissible evidence and are potentially seeking documents and materials which are HIPAA protected, subject to other New York and federal privacy statutes and otherwise protected by the attorney-client privilege and attorney work-product privilege.  Defendant also objects to the extent these demands seek information that is a matter of public record and can be ascertained by the Plaintiff.

**DEMAND:  With regard to 9u, Plaintiff is entitled to insurance information. If you allege this is privileged, please provide a privilege log.**
**ORIGINAL DEMAND No. 9(u): All documents concerning any releases, settlements or other agreements, formal or informal, that reduce the amount of liability insurance available to cover the Plaintiff's losses.**

The relevant insurance information was previously provided in Defendant's Initial Rule 26 disclosures, which were served on November 19, 2020.  Defendant previously objected to this demand to the extent that it is overly broad, unduly vague, ambiguous, susceptible to multiple meanings, and demands information that is not relevant to this case.  Defendant further objected to this demand to the extent that it seeks information that is confidential and subject to privilege. Defendant renews these objections.

**DEMAND: With regard to 9w, kindly identify, along with documentation, any hospitals where Defendant has or had privileges for the past 10 years and whether such privileges were withdrawn by any such hospitals. Plaintiff is entitled to information concerning Defendant's practice history.**
**ORIGINAL DEMAND NO. 9(w):  All agreements by and between you and any Hospital for the last ten years.**

Defendant previously objected to this demand to the extent that it is not reasonably calculated to lead to admissible evidence, because this demand seeks materials confidential and/or subject to privilege pursuant to Education Law §6527 and Public Health Law §2805.  Defendant renews these objections.  Additionally, Plaintiff had the opportunity to question Dr. Kim regarding his hospital privileges during his deposition.

## DEFENDANT'S OBJECTIONS TO PLAINTIFF'S RESPONSES

Please be advised that your expert disclosure that was provided on September 13, 2021 is deficient.  These deficiencies were outlined in a good faith letter dated September 17, 2021.  Please cure these deficiencies as soon as possible.  Additionally, several discovery responses remain

2517534.1

Jae Lee, Esq.
Re:  Minhye Park v. David Dennis Kim, M.D.
February 1, 2022
Page 5



outstanding.  Please refer to our second letter motion, filed on PACER on September 16, 2021, for a detailed account of the outstanding discovery.

   Thank you for your attention to this matter.

       Very truly yours,

       Bianca M. Van Deusen

Enclosure

2517534.1

QuestQuanum™

David D. Kim, MD
143-16 Sanford Ave., 1st Floor
Flushing, New York 11355
Tel. 718-445-1700
Fax. 718-445-3097

**Education**

Great Neck South High School                              09/1983-06/1987
    341 Lakeville Road, Great Neck, NY 11020

University of Michigan                                    08/1987-06/1988
    Fleming Administration Building, Ann Arbor, MI 48109

Adelphi Universtiy                                       08/1988-12/1991
    1 South Ave., Garden City, NY 11530

St. George University School of Medicine                08/1992-06/1996
    11 East Main Street, Suite 156, Bay Shore, NY 11706

**Professional**

Albert Einstein School of Medicine                      07/1996-06/1997
    Internal Medicine Internship
    1300 Morris Park Ave., Bronx, New York 10461

Albert Einstein School of Medicine                      08/1997-09/1997
    Research in Obstetrical Pathology
    1300 Morris Park Ave., Bronx, New York 10461

Flushing Hospital Medical Center                        07/1998-06/2003
    Residency in Obstetrics and Gynecology
    4500 Parsons Blvd., Flushing, NY 11355

Solo Practice in Obstetrics and Gynecology              12/2003-present
    143-16 Sanford Ave., Flushing, NY 11355

American Board of Obstetrics and Gynecology             11/2009
    Board Certified

As of May 1, 2021

**Karen Dias-Martin, M.D., FACOG**
1 Seymour Street, 7th Floor
Montclair, New Jersey 07042

December 21, 2021

Re:   Minhye Park v. David Dennis Kim, M.D.
      United States Eastern District Court of New York
      <u>Case number: 1:20-cv-02636</u>

## EXPERT REPORT

I have been retained as an expert for this case on behalf of Defendant Dr. David Kim.  I respectfully submit the following report summarizing my review and opinions in this case. Unless otherwise noted, the opinions contained in my report are held within a reasonable degree of medical certainty.  I reserve the right to amend my report and opinions on this case based upon the receipt of additional records and materials, including up until the time of trial.

### I.    Materials Reviewed to Date:

1. Summons and Complaint
2. Dr. Kim's Certified Medical Record for Plaintiff Minhye Park
3. Certified Medical Records of Queens Surgical Center, P.C.
4. Plaintiff's medical records from Rosemom Ob/Gyn, certified translated
5. Plaintiff's medical records from Mirae Ob/Gyn, certified translated
6. Plaintiff's expert report by Dr. John Garofalo dated September 12, 2021

### II.    Testimonial History at Trial:

None within the last four years.

### III.    Medical Summary:

Plaintiff is a resident of South Korea, according to the Complaint.  On November 16, 2017, Ms. Park presented to Dr. Kim's office seeking an elective termination of pregnancy.  She reported her last menstrual period occurred on October 16, 2017.  Based upon her last menstrual period reported by Plaintiff, she was four weeks, three days gestation.

Ms. Park also reported to Dr. Kim and non-party Ob/Gyns a gynecologic history of G3P0020, meaning that this was her third pregnancy and she had two prior pregnancies that resulted in terminations.  On November 16th, Dr. Kim performed a thorough gynecologic evaluation.  An ultrasound was performed, and a gestational sac was observed without a fetal pole or yolk.  Blood was drawn and an HCG level was elevated, confirming the plaintiff was likely pregnant (HCG 256).  Dr. Kim had an informed consent discussion with Plaintiff regarding the risks and benefits of different types of abortions, including medical versus surgical

abortions.  He told her the risks of a medical abortion included pain, bleeding, incomplete expulsion of the medical products of conception and incomplete termination.  Dr. Kim discussed the risks of a surgical abortion too, as indicated in the records and specifically discussed risks of pain, bleeding, infection, perforation of the uterus, retention of production of conception and cervical laceration.  Dr. Kim advised plaintiff that he did not perform medical abortions and offered to refer Plaintiff to Planned Parenthood if she wanted to undergo a medical abortion. He also advised plaintiff to return in one week, when her pregnancy was further along for a repeat ultrasound.

On November 21, 2017, Ms. Park returned to Dr. Kim's office.  An ultrasound was performed, and Dr. Kim observed a gestational sac and yolk, without a fetal pole or heart rate. Dr. Kim had another discussion with plaintiff at this appointment regarding the risks and benefits of medical and surgical abortions.  Dr. Kim told Ms. Park that he only performs surgical abortions consisting of dilation & curettage with suction and that he could refer her to a clinic if she wanted to pursue a medical abortion.  Ms. Park at that time expressed a desire to go to Planned Parenthood and a referral was made.  Dr. Kim advised Ms. Park that medical abortions must be performed within 70 days from her last period.

After this appointment, Ms. Park called Dr. Kim's office and scheduled a surgical abortion.  The procedure was planned for November 27, 2017.

On November 27, 2017, Ms. Park presented to Queens Surgical Center, P.C., to undergo a dilation with suction and curettage.  Prior to the procedure, an ultrasound was performed and confirmed that Plaintiff had an intrauterine pregnancy and she was 5-weeks pregnant.  Ms. Park signed an informed consent form permitting Dr. Kim to perform a surgical abortion.  Dr. Kim performed the abortion that day.  The pre-operative diagnosis was elective termination of pregnancy and the operative report describes the use of classic and standard technique for dilation and curettage with suction.  After the procedure was complete, a post-procedure ultrasound was performed to check for retained products of conception.  Additionally, the removed tissue was sent to pathology for analysis to confirm that all products of conception were removed.  Ms. Park was monitored in a recovery room before discharge.  She was given discharge instructions and a follow-up appointment with Dr. Kim.

On December 3, 2017, Dr. Kim learned from the pathologist who evaluated the tissue from this procedure that the products of conception did not include chorionic villi.  He documented on the pathology report that he spoke with the patient on December 13, 2017, when she returned to his office, ("DWP – discussed with patient") to advise her of this information and its significance.

On December 13, 2017, Ms. Park returned to Dr. Kim's office.  According to the medical records, she denied experiencing pain, bleeding and discomfort.  Dr. Kim performed a pelvic exam and findings were all within normal limits, the cervix was closed and there was no vaginal bleeding.  An ultrasound was also performed and revealed that Ms. Park was still pregnant, and the embryo was 8 weeks, 3 days gestation.  Dr. Kim advised Ms. Park that she was still pregnant, and he offered to perform a repeat D&C for free.  He also agreed to reimburse her for the procedure performed in November.  Ms. Park told Dr. Kim that she preferred to wait until she returned to Korea during the last week of December to undergo another surgical abortion.  Dr.

Kim counseled Ms. Park about the risks of thromboembolic events at this appointment because she was taking birth control pills and smoking cigarettes while pregnant.

Based upon my review of the documents in this case, I am aware of the allegations in this case. Ms. Park alleges that Dr. Km negligently performed the abortion on November 27, 2017 and she claims that she was not timely informed of the retained products of conception by Dr. Kim and that she was unaware that her pregnancy continued until she was seen by two physicians in South Korea. She claims she underwent a repeat dilation and curettage in South Korea, although there is no operative report or medical record that this procedure was performed.

## IV.    Expert Opinion

I reviewed all the materials listed in the section above. It is my opinion that Dr. Kim met the standard of care in providing medical treatment to Ms. Park between November 16, 2017 and December 13, 2017. Dr. Kim met the standard of care in performing Plaintiff's surgical abortion and obtaining informed consent for this procedure. As explained in further detail below, it is my opinion that Dr. Kim timely informed Plaintiff that she suffered a known complication of early term abortions and he met the standard of care in counseling her on treatment options, including a repeat dilation and curettage.

Dr. Park's performance of a dilation and curettage with suction on November 27, 2017 was in accordance with good and accepted surgical practice for performing early term abortions. It is within the standard of care to perform surgical abortions at 5-weeks' gestation when the patient indicates she wants to terminate the pregnancy at this stage. A surgical abortion is the only treatment option for a patient who declines to undergo an abortion by medication.

Dr. Kim's operative report demonstrates that he used classic surgical technique to perform Plaintiff's dilation and curettage with suction, consistent with the standard of care. He used classic technique to dilate the cervix and Dr. Kim performed curettage until a gritty texture was appreciated. This "gritty texture" is an indication of successful and complete removal of the products of conception. In accordance with the standard of care, after curettage was complete, suction was performed as an additional measure to remove any remaining products of conception. The surgical technique by Dr. Kim was completely in accordance with the standard of care for early term first trimester surgical abortions.

It is standard of care to send the removed products of conception to a pathologist for analysis, as Dr. Kim did in this case. During surgery, the uterine contents are suctioned directly into a catheter that is connected to a vacuum. The products of conception are deposited by the catheter into a sealed and sterile vial as part of the standard operative procedure. Analysis of the tissue by the pathologist is the most accurate way to confirm that all products of conception were removed from the uterus. This analysis also allows for the diagnosis of other conditions that are potentially dangerous to the patient, such as a molar pregnancy. Virtually all physicians who perform abortions in modern medical centers today send the products of conception for pathologic analysis. This practice is standard of care.

I disagree with Plaintiff's expert's opinion that Dr. Kim was required to perform flotation of the tissue with backlighting on November 27, 2017. Flotation of tissue with backlighting is both an imprecise and antiquated method. This method consists of floating the removed contents

in saline and then viewing these against a light to determine if it appears that the tissue removed contains chorionic villi.  This technique is most often performed today as an academic exercise of instruction to medical residents and medical students.  Alternatively, it is performed when the abortion provider does not have access to a pathologic examination of the products of conception, as is the case in areas of the world where pathologists and medical resources are limited.   Flotation may be performed in the operating room if an ectopic pregnancy is suspected.  However, none of these situations existed in this case.  Dr. Kim was not performing Plaintiff's abortion as a teaching exercise to medical residents.  He confirmed via ultrasound that Plaintiff had an intra-uterine pregnancy before performing the abortion and Dr. Kim had the ability to send the uterine tissue to a pathologist for pathologic evaluation and inspection.

Dr. Kim's practice to send the products of conception to a pathologist for gross and technical examination is the preferred and undoubtedly most common method for confirming complete evacuation of retained products of conception.  A pathologist has the requisite training, experience and tools to evaluate the products of conception at a gross and microscopic level and to confirm whether this contains all of the embryonic or fetal products.  Additionally, with pathologic evaluation of the tissue Dr. Kim was able to make sure Plaintiff did not have a molar pregnancy, a possibly life-threatening condition, or any other embryonic abnormalities that would have required further workup.  If Dr. Kim had performed tissue flotation with backlighting as suggested by Plaintiff's expert, the products of conception would have been contaminated and a pathologic examination could not have been performed.

The National Abortion Federation is not an authoritative body recognized by Board certified obstetricians and gynecologists.  Moreover, the National Abortion Federation guidelines cited by Plaintiff's expert are those in effect in 2015, two years earlier than the treatment at issue.  These are not authoritative texts and do not dictate the standard of care for performing early term abortions.

In addition to using good and accepted surgical technique, it is my opinion that Dr. Kim comported with the standard of care by obtaining a post-procedure ultrasound of Plaintiff's uterus on November 27, 2017.  The ultrasound photograph in the record did not reveal retained products of conception on that date. It was clinically reassuring.

Incomplete removal of products of conception during an early term abortion is a known and accepted risk of the procedure.  This may occur absent any medical malpractice or negligence by the provider, as in this case.  As indicated by Plaintiff's own expert report, the risk of retention of products of conception is well-recognized.  The rate of failure is published and well-known because even in the absence of good surgical technique, there is an unavoidable risk of failure.  Plaintiff experienced a known risk of the surgery and this occurred absent any medical malpractice or wrongdoing on the part of Dr. Kim.  In my opinion, this was medically unavoidable and not proximately caused by negligence by Dr. Kim.

It is clear from my review of the records that Plaintiff was appropriately counseled about this risk and that her informed consent was properly obtained by Dr. Kim before the surgery.  In fact, at both office visits before Plaintiff decided to undergo a surgical abortion, Dr. Kim met the standard of care in describing the potential risks and benefits of both medical and surgical abortions.  The risk of retained products of conception was appropriately disclosed, based upon

the contemporaneous documentation in the medical records. Plaintiff also signed an informed consent form prior to undergoing the procedure.

Plaintiff was timely advised about the results of the abortion by Dr. Kim. In fact, Dr. Kim was able to diagnose retained products of conception in a timely manner because he relied upon a pathologic evaluation. Within less than a week from the date of the procedure, on December 3, 2017, Dr. Kim was notified by the pathologist that it was likely Plaintiff had retained products of conception because the chorionic villi was not observed in the specimen. According to his medical records, Dr. Kim discussed this result with the Plaintiff the next time she was in his office, on December 13, 2017. This was in accordance with the standard of care because due to the nature of the conversation, and the fact that Ms. Park required an interpreter, it was appropriate for Dr. Kim to wait until she was in the office to discuss the results of the pathology with the assistance of an interpreter.

When Plaintiff finally returned to Dr. Kim's office ten days later, the medical records clearly demonstrate that he explained to Plaintiff that the pregnancy had not been completely terminated. In accordance with the standard of care, he performed an ultrasound in the office and determined Plaintiff was 8 weeks pregnant at that time. It was in accordance with the standard of care for Dr. Kim to offer Plaintiff the option to undergo a medical abortion or repeat dilation and curettage with suction at this visit. The medical record indicates Plaintiff made an informed choice to delay further treatment and to continue the pregnancy until her return to South Korea.

For the reasons stated above, it is my opinion within a reasonable degree of medical certainty that Dr. Kim comported with the standard of care in providing gynecologic treatment to Ms. Park.

**V.       Qualifications and Expert Rate**

I am a Board-certified Ob/Gyn and fellow of the American College of Obstetrics and Gynecology. A copy of my current CV including my education and experience are enclosed as Exhibit A. I am being compensated for my time at a rate of $400/hour for record review.

Respectfully Submitted,

Karen Dias-Martin, M.D., FACOG

## Kulka, Rosa

| | |
|---|---|
| **From:** | Kulka, Rosa |
| **Sent:** | Wednesday, February 2, 2022 11:42 AM |
| **To:** | 'jae@lawjsl.com' |
| **Cc:** | Gil, Alejandra R.; Van Deusen, Bianca M. |
| **Subject:** | Minhye Park; Index No.:  1:20-cv-02636; Our File No.: 778-1018 |
| **Attachments:** | Attachments.html |

Dear Counselor:

On behalf of Bianca Van Deusen, please see the attached Response and Expert Report with respect to the above matter.

Thank you.



**Citrix Attachments**                                            Expires March 4, 2022

HPMB_NY1-#2518036-v1-PARK_-_Respons...ter.PDF                    690.1 KB

HPMB_NY1-#2518893-v1-Park_-_Expert_Report.PDF                   38.7 MB

**Download Attachments**

Rosa Kulka uses Citrix Files to share documents securely.

**Kulka, Rosa**

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | 'jae@lawjsl.com' |
| **Sent:** | Wednesday, February 2, 2022 11:42 AM |
| **Subject:** | Relayed: Minhye Park; Index No.:  1:20-cv-02636; Our File No.: 778-1018 |

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

'jae@lawjsl.com' (jae@lawjsl.com)

Subject: Minhye Park; Index No.: 1:20-cv-02636; Our File No.: 778-1018

**Velazquez, Bernice**

| | |
|---|---|
| **From:** | Velazquez, Bernice |
| **Sent:** | Friday, February 4, 2022 2:27 PM |
| **To:** | 'jae@lawjsl.com' |
| **Cc:** | Gil, Alejandra R. |
| **Subject:** | Minhye Park v. David Dennis Kim, M.D.; Our File No.: 778-1018; Motion to Dismiss |
| **Attachments:** | Park- Notice of Motion.pdf; Park- Declaration in Support of Motion to Dismiss.pdf; Park-Memo of Law for Motion to Dismiss.pdf; Park- Rule 37 Certification.pdf; Park - Exhibit N -Plaintiff's Expert Report.PDF; PARK -Exhibit O - Defendant's Letter to Plaintiff dated September 17, 2021.PDF; PARK - Exhibit P - Defendant's Responses to Plaintiff's Interrogatories and Demand for Production of Documents.PDF; Park- Exhibit Q - Plaintiff's Letter to Defendant dated January 28, 2022, regarding deficiencies.pdf; PARK - Exhibit R - Defendant's Letter to Plaintiff dated February 1, 2022, responding to deficiency letter and Defendant's Expert Report.PDF |

On behalf of attorney, Alejandra R. Gil, Esq., attached please find the attached as it pertains to the above-referenced matter:

1. Notice of Motion;
2. Declaration in Support of Motion to Dismiss (with Exhibits:  N, O, P, Q, and R);
3. Memo of Law for Motion to Dismiss; and
4. Rule 37 Certification.

Thank you.


Bernice Velazquez
Legal Secretary
Heidell, Pittoni, Murphy & Bach, LLP
81 Main Street
White Plains, NY 10601
Tel:  (914) 559 - 3100
Fax: (914) 949 - 1160
www.hpmb.com

